# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

SANDRA COULTER,

    Plaintiff,

*v*.                                        Case No. 07-CV-10770

COMMISSIONER OF            DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     REPORT

### A.     Introduction and Procedural History

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E. D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation is issued only to address the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income (SSI) benefits. This matter is currently before the Court on cross motions for summary judgment.

In December 2002, Sandra Coulter, acting as next friend, filed the instant claim on behalf of her son (hereinafter "JAG"), who was born in October 1989, and whom the Administrative Law Judge ("ALJ") noted was enrolled in the 10th grade. (Tr. at 19, 56-58.) The claim was denied at the initial administrative stages. (Tr. at 23-27.) On November 10, 2005, Plaintiff appeared before ALJ Richard Sasena who considered the case *de novo*. In a decision dated March 18, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 10-20.) Plaintiff requested a review of this decision on May 15, 2006. (Tr. at 8-9.)

The ALJ's decision became the final decision of the Commissioner on January 14, 2007, when the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On February 22, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.    Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts

relevant to an application for disability benefits. A federal court "may not try the case *de novo*. . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v.*

*Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C. Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382(a)(3)(C)(I). To determine whether a child's impairment results in marked and severe limitations, SSA regulations[2] prescribe a three step sequential evaluation process:

1. If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a).

In the third step of this analysis – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The regulations direct the Commissioner to evaluate how the child functions in six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are:

1. Acquiring and using information;

2. Attending and completing tasks;

---

[2]For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well being.

*Id.*

At issue in this case are the first two domains. As to the first, the regulations state that the Commissioner must consider how well the child acquires or learns information and how well that information is used. Claimants with limitations in this domain may misunderstand words about space, size, or time; have difficulty rhyming words or the sounds in words; have difficulty recalling important things learned in school the previous day; have difficulty solving mathematics questions or computing arithmetic answers; or speak only in short, simple sentences with difficulty explaining what is meant. 20 C.F.R. § 416.926a(g)(3). For adolescents between the ages of 12 and 18, the regulations explain that:

> ... [they] should continue to demonstrate what [they] have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). [They] should also be able to use what [they] have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). [They] should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). [They] should also learn to apply these skills in practical ways that will help [they] enter the workplace after [they] finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(2)(v).

As to the second domain – that of attending and completing tasks – the regulations state that the Commissioner considers how well the child is able to focus and maintain attention, initiate, carry through and complete activities, and the pace and ease with which activities are completed.

6

Claimants with limitations in this domain are easily startled or over-reactive, slow to focus on or fail to complete activities of interest, become easily sidetracked, frequently interrupt others, become easily frustrated and give up on tasks, including those they are capable of completing, and require extra supervision to keep engaged. 20 C.F.R. § 416.926a(h)(3). For twelve- to eighteen-year-olds, the regulations state that with regard to this domain, they should be able:

> to pay attention to increasingly longer presentations and discussions, maintain [their] concentration while reading textbooks, and independently plan and complete long-range academic projects. [They] should also be able to organize [their] materials and to plan [their] time in order to complete school tasks and assignments. In anticipation of entering the workplace, [they] should be able to maintain [their] attention on a task for extended periods of time, and not be unduly distracted by [their] peers or unduly distracting to them in a school or work setting."

20 C.F.R. § 416.926a(h)(2)(v).

If the child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d). A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that "interferes *very* seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (italics added). "Marked" and "extreme" limitations in a given domain can be established by standardized test scores that A "marked" limitation is shown by a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain-related activities is consistent with that score. An "extreme" limitation is shown by a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and

7

the child's day-to-day functioning in domain related activities is consistent with that score. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive, therefore, and the bulk of 20 C.F.R. § 416.926a is devoted to "general descriptions of each domain" against which a claimant's functioning may be compared.

### D. ALJ's Findings

The ALJ applied the Commissioner's child disability analysis to Plaintiff's claim and found that Plaintiff had not engaged in substantial gainful activity. (Tr. at 19.) At step two, the ALJ found that Plaintiff's impairments were "severe." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal the listings in the regulations. (Tr. at 20.) More specifically, the ALJ found that Plaintiff did not exhibit an "extreme" limitation in any of the six domains, nor "marked" limitation in any two domains of functioning, concluding that Plaintiff had a " less than marked" limitation in acquiring and using information, but a "marked" limitation attending and completing tasks. (Tr. at 18-19.)

### E. Arguments of the Parties

Counsel for Plaintiff disputes the ALJ's findings as to domains one (acquiring and using information) and two (attending and completing tasks), arguing that the administrative record provides substantial evidentiary support for an "extreme" limitation in domain two, or in the alternative, a "marked" limitation in both these domains. Counsel for the Commissioner, pointing to much of the same evidence, maintains that substantial evidence supports the ALJ's decision.

### F. Evidence Presented to the ALJ

Evidence contained in the administrative record indicates that JAG attended special education classes, for which Individual Education Programs (IEPs) were prepared for each school year from 1999 to 2005. (Tr. at 102-110, 170-225.) In this process, various teacher evaluations

and activities reports were prepared. (Tr. at 111-112, 115-122, 149-151, 161-169.) JAG was also seen by his family physicians (Tr. at 113-114, 139-147, 152-157,) and underwent psychological counseling between September 1998 and April 1999. (Tr. at 94-101.) In April, 2003, JAG underwent a psychological evaluation conducted at the request of the Disability Determination Service by Dr. Mary Parks, Ph.D. (Tr. at 123-132.)

### G. Review of ALJ's Determination

#### 1. Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in his analysis of Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In *Williams v. Barnhart,* 399 F. Supp. 2d 640 (E.D. Pa. 2005), substantial evidence supported findings that a high school age adolescent had "less than marked" impairments in domains one and two even though the child had academic problems, occasional immature behavior, 10th grade testing scores showing second-grade performance in mathematics and reading, and IQ scores 12 to 15 points below those of JAG. (*See* Tr. at 123.) In *Allen v. Barnhart,* No. 05 Civ. 7855 (SAS), 2006 WL 2255113 (S.D.N.Y. Aug. 4, 2006), the court found that although the

child showed delays in expressive communication and language, cognitive and speech skills, and functioned "significantly below her age level" in these areas, substantial evidence supported the Commissioner's findings of "less than marked" impairments in domains one and two where the child evidenced the ability to focus on tasks, follow directions "most of the time," and showed progress in her ability to be attentive.

After review of this record, I suggest that although there is evidence to the contrary, substantial evidence supports the findings of the ALJ. While some IEP documents, particularly earlier reports, indicate that JAG struggled with assignments and with focusing his efforts (Tr. at 103, 107, 109, 116-117, 162, 179, 186,) academic achievement testing administered in 1999 by a school psychologist indicated that JAG "performed well." (Tr. at 163.) JAG was described as having "good" math and language skills. (*Id.*) Although written expression scores were lower, the school psychologist stated that they were within the normal range for JAG's age. (*Id.*) Psychological counseling reports indicate that JAG stated that "he loves his new school." (Tr. at 97.) During some of these sessions, JAG played relatively complex board games with his counselor. (*Id.*) IQ testing conducted by Dr. Parks during her psychological evaluation of JAG completed at the request of the Disability Determination Service, yielded results described as within the "average" range (Tr. at 125,) and were comparable to those obtained four years earlier by the school psychologist. (Tr. at 162-163.) IEP documents completed in 2004 state that JAG's mother reported that he had "improved a lot academically this year." (Tr. at 186.) IEP documents completed in 2005 report that JAG was "making adequate progress towards current goals and objectives." (Tr. at 173.) A "School Activities Questionnaire" completed by JAG's special education teacher in November 2005 stated that JAG "tends to stay on task most of the time. When time-off-task occurs, a simple verbal re-direction is all that is needed." (Tr. at 149.) This evaluation, I suggest,

directly supports the ALJ's findings that JAG did not suffer from marked or extreme limitations in the second domain. 20 C.F.R. § 419.926a(h)(3). The teacher further reported that assignments were timely "a majority of the time," that he was "a very easy-going student," and that he "responds in a socially acceptable way [.]" (*Id.*) These characterizations, I suggest, are consistent with the ALJ's finding of no marked or extreme limitations in the second domain because JAG is not consistently frustrated nor does he then give up on completing tasks. 20 C.F.R. § 419.926a(h)(3). The special education teacher concluded his report by stating that JAG "is a wonderful student to have in class." (Tr. at 150.) During that same school year, another teacher reported that JAG was "working to his capability." (Tr. at 151.)

An administrative hearing, Dr. William Weil, M. D., a pediatrician and Professor of Pediatrics at Michigan State University (Tr. at 33-34) testified as an expert witness. The doctor described his review of medical and academic documentation relating to JAG and stated that as to domain one, although JAG "clearly has a problem with that [acquiring information,] [h]e's getting Resource Group Health and [] the testing however would suggest that although this is a problem area for him, he's – it's not at the level of marked." (Tr. at 262-263.) As to domain two, noting the most recent teacher evaluations, he opined that "at least as of the moment it's been less than marked, although there is certain indication that it was marked in the past." (Tr. at 264.) This testimony, I suggest, is consistent with the evidence of record and provides additional support for the ALJ's findings. Counsel for Plaintiff's arguments to the contrary, I suggest, fail to carry the day, as they neglect to address the more recent IEP documentation and teacher reports cited both by the ALJ and Dr. Weil. Although apparently never raised by counsel for Plaintiff, I note that the ALJ discounted a Childhood Disability Evaluation Form completed by JAG's family doctor in November 2005, (Tr. at 152-157,) which indicated that the doctor believed that JAG showed

"marked" limitations in both domains one and two. (Tr. at 154.). "While the ALJ [is] not bound by the opinions of plaintiff's treating physician, he [is] required to set forth some basis for rejecting these opinions." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). An ALJ is not bound by conclusory statements regarding the claimant's eligibility for benefits. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). As noted by the ALJ, however, the family doctor's opinions border on the conclusory, are both inconsistent with and give no indication that he was aware of any of the IEP documentation, teacher reports or psychological evaluations reviewed by Dr. Weil. (Tr. at 18.)

I therefore conclude that the evidence in this case is comparable to that in *Williams* and *Allen, supra*, and constitutes substantial evidence supporting the findings of the ALJ. Accordingly, I suggest that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                     s/ *Charles E Binder*
                                     CHARLES E. BINDER
Dated: January 18, 2008              United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, Mikel Lupisella, and on the Commissioner of Social Security, and served on District Judge O'Meara in the traditional manner.

Date: January 18, 2008        By    s/Patricia T. Morris
                                               Law Clerk to Magistrate Judge Binder